We'll hear argument first in case number 20-1027, Henry v. County of Nassau. Mr. LaRidola. Good morning, your honors. Robert LaRidola here, and I'm with my client, Mr. Lambert Henry. Shall I proceed, your honor? Yes, proceed, please. May it please the court. In the Henry matter, Magistrate Tomlinson had offered a proffer of proof be made to support the plaintiff's case. Mr. Henry provided a whistleblower affidavit from a county official with irrefutable knowledge about a policy that was being alleged to reduce the overall number of pistol licenses in Nassau County and deter gun ownership. That is the confidential appendix, paragraphs 30 and 39, more thoroughly cited as pages 1 through 8. But that confidential appendix was not mentioned anywhere in the decision. Now, the court has to give in a motion to dismiss every benefit to the non-moving party, in this case, the plaintiff. And by failing to address that critical affidavit, the court applied a different policy. The court applied a policy of public safety. Now, public safety was not the right policy, and I argue that in SPA 17, special appendix 17, which is the decision, you can see where the court is focusing on the public safety policy. But in reality, in the Henry case, there's no public safety concern. The county, if you look at the restricted actions that are mentioned in the Henry cases, for example, the letter that's being issued upon revocation of a pistol license, that one will automatically have their rifles and shotguns removed. There's no public safety argument in this case. Mr. Lambert, Henry was offered at the appearance before Magistrate Thompson to return. I'd like to ask you about the government's interest in its policy here, but before we get to that, you sent a 28-J letter yesterday about this Fusco case, and I just wanted to ask you something about it, because looking at the materials in the case, it seems that in the Fusco case, the county, in its motion to dismiss, said the clear, unambiguous language set forth in New York Penal Law 400-0011C mandates the shotguns and rifles upon revocation of a pistol license. But after that revocation, the plaintiff is not prohibited from owning rifles or shotguns, but only pistols following revocation of his pistol license, meaning that he can then go and get rifles and shotguns. But then in this case, in the county's brief, it says the plain meaning of 400-0011C is clear. Once a pistol license holder's license is revoked and canceled, he's prohibited from firing firearms at any time. Is there a way to reconcile the position of the county in these two cases, or are they just taking different positions with respect to Mr. Fusco and Mr. Henry? Your Honor, the positions cannot be reconciled, and in fact, the county did walk back that automatic revocation under 400-0011, which goes back to the prior case, the Judge stated that those two cannot be linked. The language that was used by Ms. Connolly in that citation is that revocation does not equal ineligible under 400-0011A. So, and we should also note that in the Henry case... Okay, so I'll ask the county about that, but you're saying that the county has changed its position since the one that it represented in the brief, that there's a permanent ban. So, is your understanding that Mr. Henry is now allowed to purchase rifles and shotguns? We believe that he is eligible, but the county has not so stated, and they never issued him that letter, which was going to revoke his pistol license and restore his rifle and shotgun license. And what they've done now is they're taking that Weinstein case, and they're trying to say, notwithstanding the fact that they've decoupled this issue and that Weinstein should not be applied to support an independent county revocation right at any time, they're now doubling down on that. And that's just not... Okay, so then maybe we can clarify what the current state is, but at least as it's been briefed to us, it seems that the county had been arguing that Mr. Henry was subject to a ban on all firearms ownership. Wasn't that right? That is certainly the case. We argued strict scrutiny, Your Honor. So, that means that Mr. Henry can't own any firearms for any reason, was at least the understanding when it was briefed to us? That is the revocation letter, and that's the county's position in Henry. Right. And then, can I ask you, is there any reason... So, you talked about the public safety interest. So, Mr. Henry was subject to the disputes. Is there a concern that he's something other than a law-abiding citizen? I mean, why isn't there a public safety concern because of that history? Your Honor, there's no public safety concern because the matter went to the family court. The family court, upon an ex parte application by his daughter, who he has custody of, by the way, they did a hearing on that. And even at the ex parte temporary order, the judge did not check box 12, which is a part of an order of protection form that calls for removal of firearms. So, the complaint that was being made against this gentleman is a retired law enforcement officer, retired army... Did Mr. Henry appear at the hearing? No, he did not appear at the hearing. He didn't have any representation. So, the revocation of his license, or at least the initial suspension of his license, happens upon an ex parte order from the family court. This is very important, Your Honor, because Judge Hurley did not understand this, but Judge Azraq in the Pansela case understood it exactly. The family court order does a hearing. It's one of the four ways you can lose a license under 400.0011, a family court order of protection. The family court order of protection was held ex parte, and the family court judge in both Pansela and in this case decided that the facts were not alleged to support removal of firearms. When the county comes out, one of the restricted acts is that the county has a policy... Well, I understand that, but the New York State law does give the county the right to revoke a cause. So, isn't the question whether this is good cause? No, because that's never been tested. The county's letter is automatic, and they don't look at good cause. Once the revocation takes place for a handgun, they're automatically revoking rifles and shotguns, and that just can't be the law. Well, just to clarify what happened. So, my understanding, based on the New York State cases, is that these ex parte orders of protection just issue as a matter of course often and often in an abundance of caution, but they're not contested and they don't establish that someone is guilty of the underlying conduct, right? That's true, Your Honor, but even with that very, very loose standard in both Pansela and Henry, the facts were not asserted to support removal of firearms. So, when the county comes in and takes that away, that demonstrates the safety argument and what they're actually doing. Well, even apart from that question, my understanding on the fact of this case is the order of protection was dissolved in March 2015, and the county continued to retain Mr. Henry's firearms and to suspend his license. That's exactly so. And didn't determine a rescission until, when was it, May 20? No, October 2016. So, two years later. Right, and again, the problem is this linking, this automatic linking without any due process of the removal. And again, the county appeared to be changing their policy to remove that from the order. They indicated in court they were going to do it. And then when this decision came down, dismissing our case, they instead doubled down on this policy again and again. There's another case out there for another law enforcement officer called Davenport. They did the same thing to him. So, the letter is a real problem. It doesn't fit with either a public safety goal or any other purpose. So, that's the initial suspension that takes place from October 2014 to October 2016. But then Mr. Henry gets a notice that his license has been officially revoked, right? And in that letter, the county cites not only the temporary order of protection, but a history of revocation. Is that justified? The rescission of the pistol license may or may not be justified, but the revocation of all firearms is definitely not, should not be linked. There is no due process related to that. And I'd like to point out that there was no public safety emergency with this case, because I believe they waited five years. Can I just add, follow up on this comment you made about the public, the due process. So, by the time the county has officially revoked his license, and they do so based on some allegations that have been made against Mr. Henry, I understand from your brief that Mr. Henry denies those allegations. Did he have an opportunity to contest that? Did he put evidence in front of the county before they made the rescission? The rescission followed about a year after the family court action dismissal, so they were in no rush. But as far as his opportunity to be heard, the answer is no. He's able to write a letter, and then they wait several more months. And then by virtue of the appeal, the date of revocation is delayed another year. And the whole process is meant to delay, delay, delay, which supports the confidential whistleblower affidavit that the real goal is to deter gun ownership, certainly to deter handgun ownership. And in this case, you know, we have a fellow that has custody of his daughter. Well, putting aside the question of whether it's what their real goal is, the reality of it is, is they decided that the ex parte order was good cause for revoking his that other allegations that he denied, or sorry, for suspending his license and other allegations that he denied was the basis for revoking it. And the revocation operates as a ban on his owning firearms for five years, I understand. But because they found that there's good cause for not giving him a license, I would imagine he couldn't, wouldn't qualify even after five years had I think the chances of him ever owning a handgun in Nassau County are very, very low as opposed to any other county where he could easily get a home premises license. Even New York City gives a home premises license. He'll never meet a proper court standard in Nassau County, but Nassau County does not recognize the proper court standard and does not issue a home premises license as they must. Okay. All right. If I have a question, go ahead. Did he have, did he after the second order, Judge Walker, did he, apart from the letter, writing a letter, did he have an opportunity after the firearms, after the revocation at all to ask for a reconsideration? No. I thought there was, I thought there was some kind of an appeal process. Isn't there? Oh, the, the administrative appeal. I believe he wrote a letter and did an administrative appeal. Yes. But they basically just, again, after several months or years reached another decision and then they, they bootstrapped the time for revocation after that. But there was just another letter process. There's no hearing. I believe maybe New York City does hearings on these types of revocations where there's evidence presented and witnesses come forward. But no, there was nothing like that. Just a letter. Did his letter contain evidence? I believe his letter explained that. Yeah, I believe it contained his affirmation. That was merely a statement that, you know, for years he's had the license has not been revoked and that the family court did not support revocation and that the pistol license section determination does not flow from the revocation because the order of protection did not include firearm provocation. Did he, did he discuss the past incident? Did he discuss the other incidents in the letter? I'm sure he did. I'm sure he did. You mentioned Pandela a second ago. So in Pandela, we've held that when a county takes firearms, there needs to be a hearing, a prompt hearing to determine when the, the owner is going to get them back, right? That, yes, Judge Azarick referred to a crimestock hearing, but I, I refer to that because Judge Azarick took great issue with the fact that the police were, the police, not the sheriffs, but the police were confiscating all firearms when the family court order box 12 had not been checked. And that was the, the chief offense that she found with the county, which is still continuing. But again, it's part of their policy to deter gun ownership. If you bring a family court action, we're taking your guns, whatever the family court says, it makes no matter. Yeah. Okay. I appreciate that. If my colleagues don't have further questions, we'll hear back from you again on rebuttal. So let's hear from the county, Mr. Vanderweg. Good morning, Robert Vanderweg. I just wanted to make sure you can hear me. Okay. Robert Vanderweg, deputy county attorney for the Appalachee County and the individual. The let me just make one thing clear. There were no long arms involved in, in, in this case when the order of protection was served on Mr. Henry by the deputy sheriff. The only thing he had was his pistol and that is what was taken. The county never had any long arms. He never had any long. We don't, didn't have them. So. But if he allowed, so I guess my question is this, is he allowed to purchase them? So New York Penal Law 4000011C says that when a pistol license is revoked, there needs to, his handguns, rifles, and or shotguns need to be confiscated. Now it seems that in the Fusco case, the county of Nassau took the position that that means whatever handgun, sorry, whatever rifles and shotguns he has in his possession need to be confiscated, but he can still buy others going forward despite the revocation of pistol license. But in your brief, in this case, you say at the top of page 10, the plain meaning of 4000011A and C is clear. Once a pistol holder's license is revoked and canceled, he is prohibited from owning any firearms at any time. So, so Mr. Henry seems to be understanding that that revocation means he can't go out and buy long arms. Are you telling me that that's not the county's position? If he, if I misspoke there, I apologize. Originally that was the position of the county, but the county's position is and has been that notwithstanding 400 subsection 11, which speaks specifically to surrendering all firearms, the county's position is he is free, assuming he's under no other impediment than I know of, to purchase long arms. Oh, okay. So your position now is not that he's prohibited from owning any firearms at any time, but only handguns. That's correct. Okay. But just to clarify again, because they, listening to Mr. Lower Dela, the, the only thing that the county ever had, the only thing the county confiscated was his pistol. He had no longs. So, right. But that, but that's different from the question as to whether he feels that he's allowed to go out and purchase long arms. I mean, you are correct, Mr. Judge. Yes. Can I ask you another question, which is the, the, the district court, and you make this point in your brief too, says that because Plaintiff is not alleging that Nassau County has implemented a policy banning all firearm ownership for all people, Henry's right not to own a firearm, the prohibition on him did not come close to the second amendment. Right. Is that your position that as long as Nassau County is not banning gun ownership for everybody in Nassau County, there's no, there can't be a substantial burden on second amendment, right? Well, I think what I was trying to say is that it gets a little muddied after reading plaintiff's arguments to make it clear that Nassau County does, is not taking a position that residents cannot purchase and possess long arms. There is a situation when a person has a pistol permit license and it's revoked. The 411 makes it clear that the, everything is to be surrendered as we've been talking since the post-deprivation hearings, which are new, but they come into play as far as when long arms are retained and how they get back to the original owner after the order of protection is served. If I may, everyone was operating under a problem to the extent that in New York, when orders of protection were issued initially via the family court, it was difficult to get the long arms back to the person in order to, because it was difficult to get a family court judge to give an order directing the sheriff to turn it back and put the sheriff in a terrible position. I understand, but that's not our case because this isn't about the return of long arms. But I guess my question is, if we said that that kind of a hearing is required when actual guns are confiscated and need to be returned to somebody who retains their license, wouldn't at least the same amount of process be applicable if you're going to revoke somebody's right to own firearms at all? Are we talking about after a pistol permit is revoked, or are we talking about long arms? Yeah, yeah, on the revocation of the pistol permit. Well, I mean, until this argument, I think from your briefing, it seemed that the Now you're saying it's only pistols, and so maybe that modifies the way we should think about this. But you are taking away his right to own a pistol. Shouldn't that at least entail the amount of process involved when you confiscate and need to return an actual individual? Well, there is. I mean, there's a hearing. There's an appeal process. It's attached to the various papers, among other things. Mr. Henry did appeal, and notwithstanding how Planky is characterized. Well, I guess, I mean, I don't know. Maybe you can help me with the way the facts work here. So my understanding is that in October 2014, there was this ex parte order of protection, which was just offered without him being able to make any argument in his defense. And then the county immediately revoked or suspended his license and confiscated his guns. Is that right? That's correct. And they were obligated to do that under the penal law, that they had to confiscate the guns on the issuance of the order of protection. They had to do that. And the only gun was a pistol at that time, right? Correct. Okay. They had to do it under a county policy, or you're saying that state law required them to do it? Yes. I mean, we can argue about long arms and what have you, but penal law 400.11, subsection 11, says that an order of protection, then it says all. But what I'm saying is the pistol must be confiscated. And you can understand that, I'm sure, because we're... But it must be confiscated when the person becomes ineligible to have a license. And the reason that Mr. Henry became ineligible to have a license is because Nassau County's policy is that a temporary order of protection is good cause for denying a license or for revoking a license, right? I mean, the statute doesn't say, doesn't define good cause. It gives the county officer discretion to decide what it is. And Nassau County has said that the temporary order of protection is that good cause. Well, your honor, when an order of protection is issued and the sheriffs go to the home to serve it on the party, they would be derelict in their and it's the government's interest to protect the other people in that house who have caused an order of protection to be issued for their protection. I've never heard of a situation where someone was challenging in the first instance that an order of protection is served on an individual and he doesn't have to return over his pistol. Yeah, that's fair enough. So let's say that there needed to have some kind of a period of time to determine whether there's dangerousness. But in this case, the order of protection was dissolved in March, 2015, and there was no determination that Mr. Henry was a threat to anyone, right? I don't know whether that's true. I don't know what they knew at that particular time, but they did know that there was a dispute to the extent that the people were in court and an order of protection was issued by a judge and turned over to the sheriff. Right, but so I guess my question is, after the order of protection is dissolved and there's no further action, so no determination that anything else needs to be done, that Mr. Henry is a threat to anyone else, you still continue the suspension until October 2016, right? Well, if I may, and that's when the notice was issued. I don't know, but you don't know when the order of protection is vacated whether he is a threat to anyone else in that household. And in fact, as in this particular case, after a thorough investigation, they had something like 14 separate incidents of domestic violence, which is certainly cause to be very concerned about the people in that home. I understand that. I understand that. But what I'm looking at is the way the law works. If you have an ex parte order of protection, so with no right of the individual firearms owner to come in and represent his interests before the order of protection is served and the firearms are seized. But then later on, the order of protection is lifted and you keep his firearm. And that's what troubles me because that's the first time when the order is lifted. Presumably that's after he's had an opportunity to explain the situation. And it may be that the ex parte order was issued by mistake the first time. Maybe they got the and the order of protection is lifted, but the firearms ban continues, notwithstanding the absence of the order of protection being in place. And that's what I don't quite understand. How can you base a seizure of a firearm on a temporary order of protection that is later lifted? An ex parte temporary order of protection that is later lifted at the first opportunity because there's a mistake. I'm not talking about this case because there's a mistake. There's no history of a problem. The wife says I don't need it. He needed order of protection. He's a loving husband. I don't know where he got this information, that kind of thing. But he still loses his firearm. That's what I don't understand. Well, he lost his firearm because of the issuance of the order of protection. Well, temporary is an ex parte order of protection. I can understand they're seizing his firearm at that point, but I don't understand they're keeping it after he resolves the order of protection. Well, I understand that you're thinking that notwithstanding the fact that he has his appealed appellate rights and he exercises that in the investigation and only then the determination. And I might add if he doesn't like it, then he has a full article 78. But it's a very difficult situation to put a family in and the sheriff's department if they have to have complete adversarial hearings on orders of protection. He usually has an attorney in the family court and gets relief there. Counsel, wasn't the order of protection lifted? And it could take several months before the temporary order of protection is lifted. But once it's lifted, then under that circumstance, I don't understand the county's right to keep his firearm under the Constitution, to keep his firearm after that. There's no need for an order of protection anymore. Well, of course, now after Rosano and what have you, there are deprivation hearings which were triggered by the very thing that you're saying, namely pre-Rosano, for example, the order of protection. And then it's lifted and the sheriff would say, I can't just give back these things because I have the order directing me to do this and go get another order. That's not sufficient. So they now have post deprivation hearings avail themselves of that. I'm sorry. I'm sorry. I'm sorry. What order was directing the sheriff to take away the firearms? Well, the temporary order of protection. In this case, in his case, the temporary order of protection did not direct the confiscation of firearms. The judge didn't do that. That was the decision of the county. Well, but it doesn't add up. So the sheriff, it's his decision. Well, 111. So your position is you don't have any discretion to decide to take away the gun or not take away the gun. That's your order of protection? That's correct. I don't think that the New York Penal Law mentioned temporary orders of protection. As I said, it has this good cause provision that gives a lot of discretion to the county. But if your position is that the county doesn't have discretion, I would want to know why. Well, I believe 400.00 subdivision 11 talks in terms of replication suspension and talks about the issuance of a temporary order of protection, and the states shall surrender weapons. That's in the statute. So it doesn't matter. You said something about a thorough investigation and that he'd have an opportunity to explain his side. But then you also said that adversarial hearings would be too much of a burden. So could you clarify for me what investigation happened and to what extent he got this? So my understanding is in October 2016, the county sent a notice saying his license was revoked, and it was based on a history of allegations that I understand Mr. Henry denies. So what opportunity did he have to argue that there was no substance to those allegations? Well, he was entitled, and I believe he submitted whatever letter or that he wished to submit to the police appeals process before they rendered that decision. And that's a 14-page decision that goes beyond that one order of protection to 14 different incidents of domestic violence, et cetera. Now, of course, all of those incidents had occurred before the temporary order of protection in this case, and yet he retained the license. So is it that this temporary order of protection was the key thing that led the county to believe that there were too many incidents and so the license needed to be suspended? Well, the temporary order of protection obviously was the triggering factor, because now it's served on the sheriff in directing, he then has to serve it. Now, having done that, when you look and see the history of the person who has his pistol, you find 14 different incidents in which the police had to respond to the residents with domestic violence. And now when you look at that and the order of protection, if you make a determination, if he doesn't agree with it, he can further appeal, but make, I believe, a rational determination that for good cause, having a pistol with this individual in the family environment is a danger. But can I ask you a question? So if you compare the way the county says that people should not have a firearm if there's a risk of domestic violence, but that law says that you only lose your right to have a firearm if the order of protection was issued after a hearing where the person received notice and had an opportunity to participate. There's a finding that the person's a credible threat and so on. It seems much narrower than the Nassau County's policy. So, I mean, do you acknowledge that at least you could have a more that would get at the threat of domestic violence and not capture people who maybe were subject to orders of protection that turned out not to be justified? Well, I would say, I mean, I don't know if I can answer your question because I'd have to talk to the police department. You know, Nassau County and like Suffolk County and New York City are on the firing line. And so it isn't like perhaps in the federal government where you may only have situations periodically. Unfortunately, domestic violence is one of the most serious of all crimes resulting in death. And unfortunately, it happens a lot. I just don't know exactly what more the police department can do other than providing the appeal process, the post deprivation hearings and what have you. The biggest concern... ...after the preliminary deprivation, whether the procedures are adequate here, where the federal government gives you a right to a hearing, maybe present evidence, you know, a trial in effect, as opposed to just a letter, which should then be taken into consideration, but dismissed by the licensing authorities as inadequate. And I think one of the questions here is whether or not, what is it the due process requires? We're not talking about just a taking, right? This isn't just Fifth Amendment due process. We're talking about a Second Amendment right that is being taken. And the question is, what kind of process is necessary before you have that right taken away? It's not just, you know, this isn't just a normal takings case. No, I understand. And of course, obviously, when we deal with officials, it is a right, it's a privilege, and it's subject to the protection of the public. And this happens, unfortunately, a lot in suburbia, and certainly in the city. I don't know, you know, you seem to discount the appeal process from the police and the appeals officer, in this case, the surgeon police appeal officer, Christopher Todd. There was probably, I'm sure there was a lot that went into that. And Henry could submit anything he wants, whether he chooses to simply submit a letter, that's up to him. But I mean, if he wants to do something beyond that, number one, he can do it. And number two, if he doesn't like it, he can take an Article 78 proceeding. And we get involved quite a lot with Article 78 proceedings, involving the review of decisions of the licensing appeal personnel, and the decisions of the people. Okay, thank you. Thank you, Mr. VanderWeghe. I think we have the argument. Let's hear back from the appellant on rebuttal, Mr. Laradola. Thank you, your honor. Your honors, this is very, very important. If I can direct everyone to the record, the license, rather the letter written in this case, clearly states that it involves long arms and pistols. It is in the record. And I just need to refer you to A-119, as directed by New York State Penal Law Section 400, and the New York Secure Ammunition and Firearms Enforcement Act, you are prohibited from possessing firearms, rifles, and shotguns. I'd also like to show the receipt for the firearm owned by Mr. Lambert Henry, which is also in the record. That was is his Mossberg 500 shotgun, which he is barred from possessing by that letter. The third point. Did the county confiscate that from him? No, they did not. He is afraid to pick it up, but it's at the store waiting on the shelf for him. I believe it is still there. Number third point, Henry can go out and buy long arms was just conceded by counsel, which completely subverts the public safety policy because it shines a light on the loose fit between this public safety policy and the way the county is enacting it. Very important. There's always been a difference drawn between counsel. There's always been a distinction drawn between long arms, rifles, hunting rifles, and so forth, and handguns. You know, I don't think you can say that because they now let him have the long arms that somehow that undermines their public policy concerns as it might relate to a handgun, right? Your Honor, what Judge Maxtra Conlison wrote in the Napolitano case, footnote six, was her concern that the county seems to be imposing a de facto license requirement on long arms, which are outside of their grasp. Now, if there's good cause for removal of long arms, of course, they should be removed, but we're not talking about that. They're asserting a... But he's saying now that, at least in this case, there's no prohibition on him going and picking up his shotgun. I think that's what the county's position is now. They're saying that now, but another point that addresses this specifically, there's no domestic violence in this case. That was another misstatement by Mr. Van Der Waal. If there was domestic violence, a full order of protection would have been continued. This was his daughter going in and complaining about allegations related to seeing Boyd. He had custody of his daughter, and the thing was thrown out. So this was a very light touch in the family court, but the county comes down, as they do, with their policy, and the policy is the policy of the whistleblower. Reduce the number of pistol licenses in Nassau County. What about the argument that the county just made that Mr. Henry could have submitted whatever he wanted in his own defense as part of the review process, and then he can always initiate an Article 78 proceeding? That's a very important point, Your Honor. Thank you. The Article 78 as a due process remedy was addressed squarely in the very first Rosano case, that Judge Spatz said that a post-deprivation Article 78 hearing does not satisfy due process. The county really has not changed since Rosano. They're still taking property. They're still not giving it back. They're still making people wait years and years to get their property back, and now they're trying to interpret 400.0011 in a way, although they're walking it back right now to a argument to say, and the letters are still going out, there's three cases that I'm aware of that are all saying if you lose your handgun license for any reason, not a real federal reason under the Lautenberg Amendments, but for any reason that you lose all rifles and shotguns, and I've offered in the supplemental filing the Fusco letter, which mirrors exactly that language years after Mr. Lambert Henry's situation. Okay, I get that. What about this argument that the county says they don't have discretion because New York state law requires the confiscation of weapons upon the issuance of a temporary order of protection? Is that accurate? It's just a misstatement of the law. The court can read the statute itself. It makes no such statement. It's just incorrect. They are removing, as Judge Azraq said in Penzella, and that was the whole issue for her in that decision, notwithstanding, you could win in family court. Just by being in family court, the county is revoking your handgun and taking your rifles and shotguns just because you showed up and went into family court. The outcome is of no matter to the county. Okay, I think we have the argument. Thank you. The case is